Our first case is Valve Corporation v. Ironburg Inventions, 2023-1725. Mr. Legion, is it Legion? Yes. Thank you. May it please the Court? My client, Valve, appeals from the Board's remand decision concluding the Valve did not prove dependent claims 18, 19, 21, 26, and 29 of the 6-8-8 patent unpatentable. So why is the Board focusing on Claim 1? What's going on? It's been held unpatentable. I agree, Your Honor. The Board based its decision completely on its view of Valve's showing related to Claim 1 and did not even discuss the limitations of the five dependent claims at issue. So I'd like to start with Valve's answers to the Court's questions in the November 26 order. For the first question about collateral estoppel with respect to Claim 1, Valve agrees that that should apply. We've reviewed a number of the Court's collateral estoppel opinions, Max Linear and Ohio Willowood and others, and it seems to us like a pretty clear situation where collateral estoppel would apply with respect to Claim 1. And what does that mean? On the ground, as a practical level, then what do we do with this case? Well, I think one of the things that we would urge you to do with this case is to remand for the Board to reconsider its obvious analysis by accepting the fact that Claim 1 is unpatentable and it is part of the prior art and view the dependent claims in question and evaluate them whether they are obvious variants of Claim 1 or the prior art. And did the petition include, because it's hard when this case is morphed for someone to contemplate initially how it's going to go down, did the petition include separate arguments just on the dependent claims and the obviousness of the dependent claims or all the arguments in the petition very much tied to Claim 1, the independent claim? No, there are separate arguments for dependent claims. And would that implicate, I mean, the Board here, its analysis rested heavily on the absence of motivation to combine the two references. Would that still hold on analysis of just solely the dependent claims? Is that going to be the live issue if you go back on just the dependent claims? We hope that won't continue to be an issue. We think that that issue is decided incorrectly by the Board with respect to Claim 1 this time around as well, but no, we think that the analysis should be based on the cases that I mentioned. The analysis should be simply one of the three analysis, KSR analysis of the dependent claims. Okay, I'll just ask quickly. I don't want to take up too much time, but just as a practical matter, do we have to or would it be helpful or preventative or important for us to review what the Board did with respect to obviousness in this case? Would that be relevant, controlling or whatever of what might happen if it's just the dependent claims going back? Right, yes. We believe it would be very helpful because we're concerned that if it's a pure remand on collateral estoppel, we might be back again talking about motivation to combine and expert testimony and how much is needed and that sort of thing for this. The same reference as Burns and LaSalle essentially? Right, Burns is the reference we rely on for all five dependent claims. So yes, we would urge the Court to reverse as to those findings regarding motivation to combine and the need for additional expert testimony in this technology area. Okay, one more quick question. Assuming we were to affirm on what the Board did here or we were to agree with that, would that essentially dispose of the further remand proceeding we're talking about having if we conclude there was estoppel here or are there more arguments and more issues? I want to make sure I understand your question. You're saying if you... If we agree that it was not obvious, there was no motivation to combine those two references, even though that analysis was done with respect to Claim 1, are there different arguments or a different analysis that would inure to a discussion of the dependent claims? Yes, Your Honor, and thank you for clarifying. Under the framework of Max Linear, Ohio Willow Wood and those types of cases, my understanding, even if you agree with the Board on motivation to combine, the Board would now have to look at each of the individual limitations of the dependent claims to see if they are separately patentable. Patent will be distinct from Claim 1 based on all the prior art and based on the knowledge that Claim 1 is prior art. Thank you. Moving on to the second question about the mandate, Valve agrees that the Board did not follow the letter in the spirit of the mandate. The Board addressed patentability of Claim 1, which was beyond the scope of the mandate, and the Board failed to address Valve's arguments specific to the five dependent claims at issue. There are cases on point, and Stat 35 U.S.C. Section 144 seems to be on point as well. There were multiple places in Valve's appellate brief where we mentioned that Claim 1 was unpatentable, had been found unpatentable by this Court, and that the dependent claim limitations were not being addressed. Also, when this case was first remanded to the Board several years ago, within that preceding, Valve's response in its opening brief called out these issues as well. This has been percolating for a while, and unless you have any other follow-up questions about questions 1 and 2, I will move on to some fairly quick points about the merits of the Board's decision in this case. As mentioned briefly before, we would ask this Court to reverse the findings only as to the limitations of Claim 1, the motivation to combine, and the expert issues. Kind of in a nutshell, Ironburg has already agreed that this is simple and straightforward technology. That is in Appendix 453. We do not think the Board gave the proper weight to the simplicity of the technology or the teachings of the prior art, including what is fairly suggested by the LaSalle design patent. We do not think Valve actually even needed any expert testimony based on cases like Ball Aerosol and Belden v. Burke. It had to do something, so what do you think it had to do and why was the Board wrong by asking for too much? Leaving aside whether we have experts saying it or we have attorney argument.  Well, I mean, we do have some expert testimony in, but we question whether we even need that because you have the two references and it is very simple technology. It is basically changing on something that you are going to put your finger on, a game controller on the back of a game controller. Back controls have been known for a very long time. The prior art was flat. LaSalle had a curved surface. Anyone can look down at their finger and see that your finger is curved and not flat, and so it is pretty intuitive that you could use a curved surface instead of a flat surface on the back. But you did not say that in your petition, did you? Not in those exact same words, no, but we pointed out the simplicity of the technology and we have an expert who is a highly qualified, also describing what it was that one skilled in the art would see. This relates particularly to claim 29, right? Well all five of the claims, claim 29 is the inherently resilient and flexible limitation I believe. And that was the only one where it seemed to me that there was a conflict in the expert testimony of the dependent clause. I am not sure which conflict you are referring to, your honor. I do know that that particular claim limitation does appear in the prior art as well. And there are two ways for you to get to where you want to go here. One is the petition was sufficient in and of itself, and the other was that even if it weren't, based on the arguments that were raised by the patent owner, your reply should have been considered and your reply, in combination with the petition, would have been sufficient. So you want to talk about the circumstances in which you are able to rely on stuff in the reply, even if it weren't in the petition. Right, we have raised that in the alternative. And it's because Ball-Aerosol, for example, said that the motivation to combine was self-evident in that case. And we think it's self-evident in this case as well. And coincidentally, the board made the same mistake here that the district court made in Ball-Aerosol by taking the language from KSR that says that the analysis should be explicit in the motivation to combine, and Ball-Aerosol explained how that was taken the wrong way. It's referring to the court's analysis, not to the motivation to combine. So we think there were some mistakes interpreting KSR in the board's decision as well. And then my final point would be that the Intel v. Pact and the Intel v. Qualcomm cases talk about a very similar situation. Use of known technique to improve one device, a person of learning skill in the art would recognize that it would also improve another device, and also that it may not be a better solution. It just needs to be a suitable option, and that's what we think we have here. So unless there are further questions, I reserve my time for rebuttal. We will serve your time, Mr. Tampkin. Good morning, Your Honors. May it please the Court, Greg Tampkin on behalf of Ironburg Inventions. I'm just going to start right with where the court started with Mr. Lugin, which is this collateral estoppel issue and the practical implications of collateral estoppel. Certainly the board recognized Claim 1 was invalid, but collateral estoppel doesn't mean that the board... But it talked about Claim 1 being at issue on the remand. That's not correct, right? Claim 1 was at issue only in terms of the elements of Claim 1 make up part of the elements of Claim 18, 19, 21, etc. And so when you're looking at the claim in general, you have to make sure, based on the argument that the petitioner set forth, that all of the elements are met. And in this case... Wait a moment. I don't understand what you're saying. Do you agree that the invalidity of Claim 1 under cases like Max Linear is binding on the board? And we told them it was invalid and to proceed on that basis, right? Yes, that is correct. And they didn't do that, right? I disagree. I think they did acknowledge that Claim 1 was invalid, then they looked at separately Claim 18, Claim 19, Claim 21. All of those claims depend from Claim 1. And as a result, there has to be a motivation to combine those references and the... Do you re-litigate the validity of Claim 1 in connection with the dependent claims? It's not re-litigating the validity of Claim 1 at all. It's re-litigating the validity of Claim 18, 19, etc. And so the question is, in light of those elements, are those elements shown? Because this isn't a situation where we can look at the record as a whole and make various determinations. It's what were the arguments that were sent back on remand. And the arguments that the court was to consider was the Burns and LaSalle combination. Only the new limitations of the dependent claims are at issue here, right? Certainly only the new limitations of the dependent claims are at issue. But there still needs to be the overall existence of the elements and the motivation to combine the references to create the claims. And so you have to look at the underlying Claim 1 to understand the motivation to combine. As Judge Prost asked, what's the practical implication of this? If it goes back down and you say that Claim 1 is invalid and you should not consider a Claim 1, you still have to look at motivation to combine. The Claim 1 was invalidated based on an anticipatory reference, the U reference or UE reference. And there was no argument. But the only prior art relevant to the dependent claims is Burns, right? No. It's Burns and LaSalle. Wow. So there's no ground for one of the dependent claims, but you could decide the case basically on Burns, suggesting the dependent claim limitation is correct? I don't think so. Not at least on one of them that is correct. But you have to look at the motivation to combine and what the argument is. Especially on the Claim 29, the inherently resilient and flexible problem. But the question then becomes, has there been a showing in order to bring in LaSalle and  Well, first of all... If they're not relying, as you agree, for at least four of the claims, if they're not relying on LaSalle, why is there a motivation to combine? Because they are relying on LaSalle. That is what the petitioner said. The petitioner makes its argument. Only with respect to the limitations of Claim 1. But you have to look at the overall issue with respect to motivation to combine. Why are we putting these together? We have to take the petitioner at what the petitioner said. And that's important. That's what the Supreme Court said in the SAS case. The court said the director is not at liberty to come up with its own rationale. You have to use the arguments that were made below. The arguments that were made below is not you and LaSalle, or you and Burns. The arguments below, and the arguments the petitioner made, were Burns and LaSalle. So the question is, is there a motivation to combine? With respect to the dependent, at least four of the dependent claims. There's only an argument about Burns. But you don't get to the dependent claims without a motivation to combine in the first place. I think you have to always answer the motivation to combine question. But the motivation to combine question, the one we're talking about here, is only with respect to Claim 1. That was the board's analysis. The motivation to combine only with respect to Claim 1. Right? I'm really asking if I'm right or wrong, because that's the way I understood it. I think the board looked at the motivation to combine in the context of Claim 1, because you need all of the elements. The court did not say, I only want a motivation to combine on this one element. The court looked at- You're saying that every limitation of Claim 1 is also a limitation of the dependent claims. That is what I'm saying. And so therefore, you need to look at the motivation to combine the two references to form, to make all of the elements. You look at all of the elements, Claim 18, for example. And Claim 18 does require that these, that you have a reference, the two references show and meet all of those limitations. And so you have to- That's ignoring collateral estoppel. That's ignoring the fact that the independent claim part of the dependent claims has been held unpatentable. And the board has to start from that premise in analyzing the dependent claims. And it didn't do that. It sought to basically ignore our decision and say that we're going to re-litigate the question of the, presented by independent Claim 1. I think what the board did is it litigated the question of motivation to combine the two references. That is a necessary element based on KSR, based on all this court's precedent, is there has to be the motivation to combine. And you have to look at all the limitations. You can't just choose one limitation. Is there a motivation to combine these two? You have to make sure that all, both of these references together contain all of the elements. And that's what the court did. Here, there was no motivation to combine. Well, here there was no showing of a motivation to combine, and that was the problem. I agree, Your Honor, that the issue that was easy to address is there's no motivation to combine because there's no showing as to an element or two elements of Claim 1. The two elements of Claim 1 are really a depressible control on the back and that that depressible elongate control on the back is non-parallel to effectively the back. Well, having recognized that this is pretty person-skilled and the skill here is quite low relative to other cases we have, what kind of showing was required? Some showing, and that's the point. Well, can you be more specific because that's, yeah. Yes, a showing as to why one would combine these two. An actual statement as to, for example, in this case, the expert said what the advantage would be, why there is an advantage. In fact, the expert, in this case, Dr. Rampell, I believe, indicated that the combination of these two or, excuse me, LaSalle would result in an advantage. Why was that deficient? Because he doesn't tell us what the advantage is. There's no, just saying it's an advantage is effective. You can use more fingers and it's more nimble in using these other fingers. I mean, we have a number of cases that suggest that in simple technology, we don't even need experts here. So you needed an expert to say what? You needed an expert to say what the problem was that was being addressed, what known technology exists in the art that is being addressed by LaSalle that you would combine them. The question is, why would you combine these two? Why would you combine whatever's shown in this ornamental design, why would you combine that with the flat paddles that are shown in the Burns reference? And so, what is the issue? How would it work? What is LaSalle actually teaching? And that's real important here because LaSalle was a design patent. Not saying that design patents can't suggest functional features. They can. But in this case, there's testimony as to what those functional features seem to be. For example, they could be a rubber grip. They could be a battery control. And there was actual testimony on that. And the board weighed that and looked and said, what testimony do we have, what actual rationale do we have for combining these? And is your view, I think as I understood the board, even with the second declaration that came in and we respond to the patent owner, that was also insufficient because it didn't have enough facts and I guess... There was no, it didn't have any analysis. I think that second petition, that second declaration is fairly telling, right? On the one hand, the original declaration says there's an advantage. Well, then recognizing that whatever the advantage wasn't described, there's a description of the advantage is better coupling. There's no argument in the petition about better coupling. That better coupling is something that is brand new. Why aren't you allowed to elaborate the point that you made before? I thought our cases said you could do that. The cases do say that if you're responding to an argument or you are providing an additional, a new algorithm that was already, when you're discussing an algorithm, absolutely you can add. Why isn't this within the scope of those cases? Great question, Your Honor. This is not in the scope of those other cases because in this particular case, there was nothing that was being elaborated on. There's a hole in the original. The hole, unlike when you're adding an algorithm or you're describing a new algorithm or how that, another version of the algorithm, here there's a hole. There's advantage, there's an advantageous new geometry. It was advantageous in connection with the petition and then in the reply, he explained what the advantage was. Because the whole purpose of the petition and requiring the arguments to be in the petition is to put the parties on notice and to require that all the evidence be there. Here, this is an admission that the evidence wasn't there, Your Honor. There was no, whatever that advantage was, was entirely left out. And so there's a statement with no reasoning, no rationale, no backup that it provides better coupling. But there's no, and now, on the one hand, you could envision a situation where providing more information or that more information, if it was an original petition, may be enough. In this case, it wasn't. The reason it wasn't was because, again, there's no discussion of what problem is being solved, what known issue in the art is being solved with this better coupling rationale. Again, Your Honor, Judge Pross asked, you know, what would need to have been said? And what needed to have been said is an explanation of what, why you would be looking to combine them, what the problem really is. And that's the case. So that's the claim in the reply, right? It's not. That, and that. It says your fingers fit better into things that are counter to the fingers. It doesn't say that. It says it would provide, it could provide better coupling. Theoretically. He says you would combine it because it could provide better coupling. You would combine because it possibly would provide better coupling. He didn't say could. He said could. And absolutely, he said could. But could is not a, going back to the original question is where I should go, which is, is that a rationale? Is that an explanation? It's not an explanation if you don't say why you are doing this. What is the problem? The problem in the patent. He says so because the fingers would fit better into things that were current. That's the, that is his statement of what it would do. But the patent is related to providing a, a means so one would understand, because on the back of a control, that the fingers know where the second paddle would be. What does that have to do with it? We've said repeatedly that you're going to have a motivation that's not the same as the inventor's motivation. Then what was the motivation? That's what he doesn't say. He doesn't solve, answer the question. I keep telling you what it is and you keep ignoring it. I'm sorry, time is almost running out. So I just, in Brett Bell Aerosol, I recall there, they, the petitioner said it would have been self-evident, or it was self-evident. If they had said that here, would that have been sufficient? I don't think so because I don't think it was self-evident in light of the, the testimony. Here, the question is substantial. But who gets to decide whether it was or wasn't self-evident? I think the board gets to decide. And the board in this case had testimony that it, what, that the LaSalle reference wasn't showing any buttons, any depressible controls at all. And so in light of that, you need actual testimony as to how this would be combined. So just saying it's self-evident, or saying that the that there is an advantage, is simply not enough to satisfy the burden, unless this court is going to re-weigh the evidence, and it's improper for this court to re-weigh the evidence on something like a motivation to combine, which is a factual question. Thank you, counsel. Before Mr. Lugin speaks, would the person standing in the back of the court room please take a seat? Mr. Lugin. One of the, one of the points I'd like to make is the, the discussion about could in the context of it in the, in the full sentence. That was also something that the board did was, was say that Val's expert kept saying things could be done. It was feasible, but I think that was also taken out of context a little bit. The better coupling advantage that was in the, the reply declaration, in my mind, that's the same thing as the shape of the finger. It's the same argument, Ironberg made during prosecution. I mean, they, they know what the motivation is. One, one pretty important point, I think, is the discussion a minute ago about whether there's a need to continue to combine Burns and LaSalle. And the difference is very small between Burns and Claim 1 in the first place. But, but at this point, with collateral estoppel, the board can't hang its hat on the difference between Burns and Claim 1, because Claim 1 is unpatentable. And, and we know that that difference was in the prior art anyway, because the UE reference anticipated it. So we're talking about a, a known feature that one element. Dependent claims also, you, you encompass the independent claims, right? It's the independent claims plus something else. So you've got to analyze Claim 1 if you're going to analyze the independent claims, right? Well, I think in general you do, but I, I believe it's a different framework when collateral estoppel has been applied and is remanded to the board. From my understanding of Max Linear and Ohio Willow Wood, that changes the analysis. And you don't go back to square one, you look at the, the difference between the dependent claim in question and the prior art, and determine whether that's an obvious variant or not. But to the extent that the same limitations appear in the dependent claims, the result has to be the same as a matter of collateral estoppel. Right, if, because collateral estoppel, the claims don't have to be identical. If there's minor wording differences or, you know, material differences in scope, then those would also be collateral estoppel. I guess that's, you raised kind of three legal issues with respect to obviousness in KSR. You say, the problem is, they kind of mistreated this as a design patent and didn't include functionality. You say, they said, could wasn't enough, you needed to say would. And there's a third one which I can't think of now. They didn't, the board didn't rest on the design patent. They were willing to consider the design patent for its teaching, right? There wasn't legal, you're not claiming the board, there was legal error in what the board did here, or are you? Well, we, we think the error was with whether it could be combined or not. Whether there was motivation to combine. But I, I believe you're correct that the, the board agreed with us that, that the design patent could suggest the feature. But, Irenberg was arguing that the, the design patent didn't disclose the feature. And even though you said, I thought of a third one, which is under KSR, it doesn't have to be better, it just has to be suitable. Right. But you were the ones that introduced the advantage language. That wasn't the board making it up. That was you saying, this is, this is what we're proving here. Right. So why, why isn't the board allowed to use the advantage, since you're the one that was claiming the advantage? Well, I think it's similar to the, advantage is similar to the word improvement in, in KSR. And, and as you mentioned, that's been construed to mean just a suitable option. Doesn't have to be a better option. It's probably a little subjective, all those different terms. But here, this is, you know, non-parallel is such a broad limitation. It's, you know, to be parallel is very specific. And so this is like any other configuration of the back paddle is covered by the claim. So it's, it's, it wouldn't be that hard from our standpoint to use routine skill to, to bridge the distance between claim one and each of the defendant claims. Or, or between Burns and LaSalle. But, but again, that's a moot point now that claim one is completely unpatentable. It's been affirmed. Anything further, counsel? No, thank you. Thank you very much. The case is submitted.